## JAMES KIRBY, JR. vs. NATHANIEL TEAD & wife.

A wife, by joining with her husband in a written contract with a mechanic for furnishing labor or materials for erecting a building on her land, does not thereby create a lien on her estate in the land for the amount due to the mechanic for such labor or materials, under the Rev. Sts. c. 117, and therefore cannot properly be joined with her husband in a petition, by the mechanic, that the land may be sold for a breach of such contract: But such contract creates a lien on the husband's estate in the land, and if she be joined in such petition, the petitioner may discontinue as to her, and proceed against the husband for a sale of his estate in the land.

By a written contract with a mechanic, made by a husband and wife, for the erection of a building on the wife's land, it was provided that the last payment, of $430, to the mechanic should be made "upon the entire fulfilment of the contract, in all its parts, on or before the first day of May" 1844: There was also a provision in the contract, that if any difficulty should arise between the parties, in the construction or execution thereof, it should be submitted to the decision of two housewrights: The building was not completed on the first day of May 1844, but was completed on or before the tenth day of June following: A difficulty arose between the parties, as to the construction and execution of the contract, and they submitted the matter, on the twelfth day of June 1844, to two housewrights, who decided, on the fourteenth day of said June, that the husband and wife should pay to the mechanic a balance less than $430; and on the thirteenth day of December 1844, the mechanic filed a petition that the land on which the building was erected might be sold, and the proceeds of the sale be applied to the discharge of the balance found due to him by the housewrights. *Held*, that the mechanic's lien on the husband's estate in the land was not dissolved at the time of the filing of the petition, by virtue of the provision in Rev. Sts. c. 117, § 3, that "the lien shall be dissolved at the expiration of six months after the time when the money due by the contract, or the last instalment thereof, shall become payable, unless a suit for enforcing the lien shall have been commenced within the said six months."

At the time when a husband and wife made a contract with a mechanic to furnish labor and materials for the erection of a building on the wife's land, they had not had a child born alive; but after the mechanic filed a petition that the land might be sold for breach of the contract, pursuant to the Rev. Sts. c. 117, they had a child born alive. *Held*, that the mechanic's lien extended to the husband's estate in the land as tenant by the curtesy initiate.

THIS was a petition, filed on the 13th of December 1844, praying for an order for the sale of certain premises, pursuant to the provisions of the Rev. Sts. c. 117, which give a lien to mechanics and others for the cost of repairs and improvements on real estate. The case was submitted to the court on the following statement of facts:

On the 21st of August 1843, a lot of land was conveyed to Mary A. Tead, one of the respondents, then and ever since

13 *

the wife of Nathaniel Tead, the other respondent. On the 15th of October 1843, a written contract for the building of a house on said land was made by James Kirby, jr. the petitioner, said Mary A. and Nathaniel, and duly recorded. Said contract, after stating the agreements on the part of said Kirby, as to the performance of the work, contains the following provisions : " And the said Nathaniel Tead and Mary A. Tead, in consideration of the aforesaid agreements and contracts on the part of the said James Kirby, jr. do, on their part, covenant and agree with him, that they will pay, for the faithful and complete execution of this contract on his part, the sum of sixteen hundred and thirty dollars, in time and manner following, to wit : when the frame is raised, three hundred dollars ; (the cellar and underpinning under the main parts being previously finished ;) when the house is boarded and shingled, two hundred dollars ; when the clapboarding is completed, three hundred dollars ; when the house is plastered, four hundred dollars ; and the remaining sum of four hundred and thirty dollars, upon the entire fulfilment of the contract, in all its parts, on or before the first day of May next. And if any difficulty shall arise between the parties, in the construction of this contract, or the execution thereof, the same shall be submitted to the judgment and decision of two housewrights of the town of Worcester, one to be named by said Nathaniel Tead, the other by said James Kirby, jr. ; but if the referees cannot agree in opinion, they shall appoint an umpire to decide the matter."

Said house was not completed on the 1st day of May 1844, but was, on or before the 10th day of June 1844. On the 12th day of said June, an indorsement, signed by all the parties, was made on said contract, reciting that they did not agree in the construction and execution of the contract, and appointing Mason H. Morse and Theodore W. Cunningham, and submitting to them (with power to appoint an umpire, if they should not agree) the decision of the matter, and covenanting to abide by their award, and to perform the same, on demand, after due notice thereof.

On the 14th day of the same June, the said Morse and Cunningham, after due consideration, made the following award: " This may certify that we, the referees of Nathaniel Tead and Mary A. Tead and James Kirby, jr. have examined the house, fences, &c. built by said Kirby, jr. for Nathaniel and Mary A. Tead, and have decided that the said Nathaniel and Mary A. shall take the whole house, fences, and every other part of said job described in the contract of Nathaniel and Mary A. Tead and James Kirby, jr. and shall pay for the whole job, as is certified in the contract, and all extra charges which said Kirby may have against the said Nathaniel and Mary A. Tead, up to the fourteenth day of June 1844, to the sum of $1566·00.　　　　Mason H. Morse,

Theo. W. Cunningham."

Notice of said award was given to said Kirby and Nathaniel and Mary A. Tead, and the payment of the balance due ($64) demanded by said Kirby.　Up to the time of the filing of the petition, said Nathaniel had no issue by said Mary A. ; but since that time they have had one child.

Judgment to be for the petitioner or for the respondents, as the court shall order, on the petition and foregoing statemen* If for the petitioner, the sum of seventy five dollars is to be taken as the amount due on the contract, at the time of filing the petition.

*F. H. Dewey,* for the petitioner.　The question is, whether this case is within the provisions of the Rev. Sts. c. 117, §§ 1 – 5, which give a lien on land to persons furnishing labor or materials for erecting or repairing buildings thereon.　By § 3, " the lien shall be dissolved at the expiration of six months after the time when the money due by the contract, or the last instalment thereof, shall become payable, unless a suit for enforcing the lien shall have been commenced within the said six months."　Parties may, by agreement, extend the time of payment.　And these parties, by the provision for a reference, which was carried into effect, and by the referees' award, made the last instalment payable on the 14th of June 1844· and this suit was commenced within six

months from that date. See *Foster* v. *Stone*, 20 Pick. 542. *Thaxter* v. *Williams*, 14 Pick. 49. No action lies for non-payment, till the fact, on which payment is to be made, is ascertained. *Barnes* v. *Parker*, 8 Met. 134.

If it be said that the land was owned by a feme covert, who could not charge it with a lien, the answer is, that we do not attempt to charge her on any common law doctrine, but by virtue of the Rev. Sts. *c.* 117, § 1, which provide that "every person who shall, by contract with *the owner of any piece of land*, furnish labor," &c. "shall have a lien upon the whole piece," &c. Any and every owner is within this section. The female respondent could have alienated her whole interest in this land by a deed made jointly with her husband. *A fortiori* she may charge it with a lien for her benefit. But. at least, the estate of the husband in the land is bound by the lien. By the Rev. Sts. *c.* 117, § 26, a life estate, or any estate less than a fee simple, is brought within the other provisions of the chapter.

If the wife is not chargeable in this suit, the petitioner will discontinue as to her. Rev. Sts. *c.* 100, § 22. *Fitch* v. *Stevens*, 2 Met. 505. *St.* 1839, *c.* 151, § 2.

*J. C. B. Davis*, for the respondents. 1. This suit was not brought within six months after the 10th of June 1844, when the last instalment was payable; there being then an "entire fulfilment of the contract in all its parts." On that day, the petitioner might have sued on the contract. *Helps* v. *Winterbottom*, 2 Barn. & Adolph. 431. *Manufacturers & Mechanics Bank* v. *Gore*, 15 Mass. 75. The agreement to refer was no bar to a suit on the contract. *Thompson* v. *Charnock*, 8 T. R. 139. That agreement was made for the purpose of fixing the amount to be paid, and not for the purpose of enlarging the time of payment. Real estate is to be affected by the decision of this question. A record was made of the contract, to which all persons might refer and in which they could see only the 10th of June, as the day from which six months were to run.

2. The wife is not liable on the contract. Chit. Con

l6th Amer. ed.) 176. In order to give a lien, the contract must be such as can be enforced at common law. She can convey her real estate only by deed. 2 Story on Eq. § 1391. *Powell* v. *Monson & Brimfield Manuf. Co.* 3 Mason, 34⁷. *Lane* v. *McKeen*, 3 Shepley, 304. *Ex parte Thomes*, 3 Greenl. 50. *Watrous* v. *Chalker*, 7 Connect. 224. And she could not enter into a reference to enlarge the time of payment. Com. Dig. Arbitrament, D. 2. Kyd on Awards, (1st ed.) 20.

The husband is not liable as tenant by the curtesy, as no child was born to him before the suit was commenced. And as this is an action on a joint contract, it cannot be maintained against him alone. A discontinuance against the wife will not, therefore, enable the petitioner to proceed. See *Bliss* v. *Bliss,* 12 Met. 266.

SHAW, C. J. Several questions arise in this case, upon the statement of facts agreed, by which it appears that the petitioner seeks to enforce the payment of a balance due to him upon a building contract, under the Rev. Sts. *c.* 117, giving to mechanics a lien in certain cases.

1. This being a contract by the husband and wife jointly, with the petitioner, it is objected that, as a feme covert, she cannot bind herself by an executory contract, and therefore cannot bind her estate.

It is a well established rule of law, that a married woman cannot bind herself by an executory contract. And as the lien is created by statute, as incident to the contract, when there is no valid contract, there is no lien. Even where, under the old common law of Massachusetts, now sanctioned by statute, a married woman was permitted to alienate her separate estate without fine, by joining in a deed with her husband, it was held that when she had so joined in a deed, by which her interest in her estate was bound, yet she was not bound by the covenants. *Colcord* v. *Swan*, 7 Mass. 291.

Were the female respondent's interest in the estate bound by her contract, the whole estate might be sold (Rev. Sts. c. 117, § 20) to discharge a small lien, and a large surplus be

converted into personal property and paid to the husband; and thus the estate of the wife would be defeated. It is insisted, as a case in point, that a married woman may, by joining in a deed with her husband, convey away her own estate, and that this building contract is the execution of the same power in another mode. It is true she may join in conveying her estate by deed; but it was from early times regarded as an exception to a general rule, and limited to the precise case. And since the rule has been sanctioned by statute, as a rule of positive law, it is under the same limitation, viz. that the wife shall not be bound by any covenant contained in such joint deed. Rev. Sts. *c.* 59, § 2.

But we think there is no objection to the petitioner's discontinuing, against the wife, without costs, so as to have a judgment against the husband alone, if entitled to it. 7 Mass. *ubi sup. Fitch* v. *Stevens*, 2 Met. 505.

2. The next question is, whether the lien was dissolved by the lapse of six months after the last instalment became due by the contract, before this suit was commenced. Rev. Sts. *c.* 117, § 3. This must depend upon the terms of the contract. The suit was commenced on the 13th of December 1844.

The contract, after describing the work to be done, and the payments to be made, from time to time, as certain parts of the work should be done, concludes thus: "And the remaining sum of $430 upon the entire fulfilment of the contract, in all its parts, on or before the 1st of May next," (1844.) Now, when the statute says "due by the contract," it must be understood to mean, due by the force and effect of the contract, taken all together. The last payment under this contract was not to be made absolutely on the 1st of May, but on the complete fulfilment and performance of the contract. This was contemplated to be on the 1st of May; but it might not be, and in fact was not. But it is insisted, that as the house was completed on the 10th of June, the last payment then became due; and this was more than six months. But although it is stated that the house was completed on the 10th of June, yet it does not follow that this was an entire

fulfilment of the contract in all its parts, so that the money would necessarily be payable. On the contrary, the respondent denied that it was fulfilled, and that he was so liable to pay. ° And the fact, that the referees made a deduction from the contract price, tends strongly to show that the contract was not fulfilled in all its parts; although, under their powers as arbitrators, they awarded that the respondent should accept it and pay for it, with such deduction.

We are then to consider the other part of this original agreement, made at the same time, and recorded with it, for the information of all persons concerned. This part of the original contract was, that if any difficulty should arise between the parties in the construction of the contract, or in the execution thereof, it should be left to the judgment and decision of referees. Such difficulty did arise, it was so referred, and the referees awarded, on the 14th of June, that the respondents should accept the house, &c. as and for the job contracted for, at a price somewhat less than the contract price, that is, with a deduction from the price, and pay for the same accordingly. This, being within the scope of their authority, fixed the amount and time of the last payment due by the contract as the 14th of June, and the suit, commenced on the 13th of December, was within six months from that time.

3. The remaining question is, what is the extent to which the petitioner's lien, under this contract, reaches, and what right or interest in the estate he may require to be sold, by force of the statute. The Rev. Sts. c. 117, § 26, explicitly declare, that " if the person, who procures the work to be done, has an estate for life only, or any other estate less than a fee simple in the land on which the work is to be done, or if the land, at the time of recording the contract, is mortgaged, or under any other incumbrance, the person who procures the work to be done shall nevertheless be considered as the owner, for the purposes of this chapter, to the extent of his right and interest in the land, and the lien before provided for shall bind his whole estate and interest therein."

The estate which the husband had in the land of his wife, at the time the contract was made, (they then having no issue,) was a right to the rents and profits during their joint lives; that is, an estate for his own life, determinable by the death of the wife. But the possibility of having issue born alive then existed, and that event would convert his estate into a tenancy by the curtesy initiate. Should the wife survive, the estate would be the same as before, and terminate with his life; but should he survive, he would hold it for his own life; so that the tenancy by the curtesy initiate was a larger estate. 2 Bl. Com. 127. It appears by the facts agreed, that since the filing of the petition, the respondents have had issue born alive; by means of which the husband's interest has been enlarged to a tenancy by the curtesy initiate, and the question is, whether the lien extends to the estate thus enlarged.

What would have been the result, had the husband acquired a new estate by a new title, it is not necessary to inquire. Here the estate was enlarged, in pursuance of a possibility, which existed at the time the contract was made, and constituted part of its value; and in this respect operated like the termination of a lease, or the removal of an incumbrance. We are therefore of opinion that the lien of the petitioner extends to the present interest of the husband, as tenant by the curtesy initiate, or an estate for his own life, whether he survive his wife or not. *Decree accordingly.*